**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**TROY LEWIS**                                                                    **PETITIONER**
**Reg. #31001-045**

**V.**                                  **CASE NO. 2:19-CV-168-DPM-BD**

**DEWAYNE HENDRIX, Warden,**
**Federal Correctional Institution-Low,**
**Forrest City, Arkansas**                                          **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.      Procedure for Filing Objections:**

This Recommendation has been sent to Chief Judge D. P Marshall Jr. Either party

may file objections if they disagree with the findings or conclusions set out in the

Recommendation. Objections should be specific and should include the factual or legal

basis for the objection.

To be considered, objections must be filed with the Clerk of Court within 14 days.

If parties do not object, they may lose the right to appeal questions of fact. And, if no

objections are filed, Chief Judge Marshall can adopt this Recommendation without

independently reviewing the record.

**II.     Introduction:**

Petitioner Troy Lewis, an inmate at the Federal Correctional Complex in Forrest

City, Arkansas (FCC-FC), brings this Petition under 28 U.S.C. § 2241, alleging the

Bureau of Prisons (BOP) violated his due process rights. Specifically, Mr. Lewis alleges

that BOP officials impermissibly caused him to lose good-time credit. (Doc. No. 1)

Warden Hendrix has responded to the petition and seeks dismissal. (Doc. No. 7) Mr. Lewis has not been able to reply to the response because the FCC-FC has limited inmates' access to the law library due to an outbreak of COVID-19 at the facility. (Doc. No. 9, 11, 13, 15). Mr. Lewis has requested additional time to file a reply. (Doc. No. 15) While the Court is generally amenable to granting inmates extensions of time during this COVID-19 crisis, in this case, the facts are not in dispute.

## III.  Background:

While in the BOP, Mr. Lewis has been disciplined on at least three occasions for violating prison policies. On August 11, 2017, he was charged with having a cell phone in prison. (Doc. No. 1 at 16) The incident report was delivered to him on November 16, 2017. (*Id.*) At the December 7, 2017 hearing, Mr. Lewis admitted having possessed a cell phone. (*Id.* at 17) As a result, he lost 41 days of good-time credits, forfeited 54 days of unvested good-time credits, and lost commissary, phone, and visiting privileges for 180 days. (*Id.* at 18)

On August 14, 2017, Mr. Lewis was found with unauthorized narcotics. (Doc. No. 1 at 12) An incident report was signed on August 15, 2017, but the report was not delivered to Mr. Lewis until more than a year later, on August 27, 2018. (*Id.*) At his October 2, 2018 hearing, Mr. Lewis denied the charge; however, based on evidence presented at the hearing, the Discipline Hearing Officer (DHO) found that Mr. Lewis had committed the violation. (*Id.* at 14) As a result, Mr. Lewis lost 41 days of good-time credits, forfeited another 13-days of unvested good-time credits, and lost commissary, phone, and visiting privileges for 180 days. (*Id.* at 15)

2

Finally, on June 8, 2019, correction officers search Mr. Lewis's cell and found alcohol hidden among his belongings. (Doc. No. 1 at 19) Mr. Lewis was charged with possessing alcohol; and the incident report was delivered to him the following day – June 9, 2019. (*Id*.) At the hearing on June 17, 2019, Mr. Lewis admitted that the alcohol was his. (*Id*. at 20) The DHO found Mr. Lewis guilty and imposed sanctions that included: loss of 41 days of good-time credits; loss of 54 days of unvested good-time credits; and, loss of commissary, phone, and visiting privileges for 180 days. (*Id*. at 21)

## IV.    Discussion:

Mr. Lewis seeks habeas relief from the sanctions imposed after his most recent disciplinary conviction; that is, for possessing alcohol in violation of prison policy. (Doc. No. 1 at 2) Despite his admission, Mr. Lewis points to his previous two disciplinary convictions to support his contention that BOP officials routinely initiate incident reports but do not serve the inmates with the reports until months—or even years—after the charged conduct. He alleges that inmates are "stripped of any opportunity to prepare a proper defense from the allegations levied against [them]." (Doc. No. 1 at 5) He complains that lengthy delays impede inmates' ability to gather evidence, interview witnesses, or preserve exculpatory materials. Mr. Lewis argues that hearings held months or years after a violation are effectively reduced to he-said-he-said evidence that effectively pits the veracity of a prisoner against that of a BOP correction officer. (*Id*.)

Congress has given the BOP the ability to create its own rules and to determine the administration of those rules, including discipline of inmates. See 18 U.S.C. § 4001 *et. seq*. When BOP officers have a reasonable belief that an inmate has violated the BOP

3

disciplinary code, an incident report including a written description of the charges against

the inmate is prepared. 28 C.F.R.§ 541.5(a). A copy of that report is provided to the

inmate, ordinarily within twenty-four hours of the incident. (*Id.*) Mr. Lewis incorrectly

takes this last directive as a mandate rather than best-case practice.

"Prison disciplinaries are not part of a criminal prosecution, and the full panoply

of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418

U.S. 539, 556 (1974); see also *Espinoza v. Peterson*, 283 F.3d 949, 951–52 (8th Cir.

2002). An inmate involved in the prison disciplinary process is entitled to three things:

"(1) advance written notice of the disciplinary charges; (2) an opportunity, consistent

with correctional goals and safety, to call witnesses and present a defense; and (3) a

written statement of the evidence relied upon by the fact finder and the reasons for the

disciplinary action." *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (citing

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff,* 418 U.S. at 563–67).

Due process requirements are satisfied when officials take these steps. *Hudson v.

Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996). To Mr. Lewis's argument, neither the

regulations nor caselaw requires anything more from the BOP than that an inmate is

notified of the charged conduct 24-hours before the disciplinary hearing. See *Wolff*, 418

U.S. at 564; 28 C.F.R.§ 541.5(a). Outside the limited degree of due process required by

*Wolff,* inmates have no constitutional right to federal prison officials' strict compliance

with prison regulations. See *Sandin v. Conner*, 515 U.S. 472, 481–83 (1995); *Phillips v.

Norris*, 320 F.3d 844, 847 (8th Cir. 2003)("[T]here is no federal constitutional liberty

interest in having . . . prison officials follow prison regulations.").

Mr. Lewis was found with alcohol on June 8, 2019. He was given a copy of the incident report the following day. The hearing, where he admitted possessing the alcohol, was held on June 17, 2019. Minimal due process for the most recent disciplinary, the only disciplinary at issue here, was satisfied.

Moreover, Mr. Lewis's reliance on the 2017 disciplinaries as evidence of a pattern-and-practice of due process violations is misplaced. In both of his earlier disciplinaries, Mr. Lewis received notification of the allegations more than 24-hours in advance of the disciplinary hearings. He does not point to a single witness he was unable to call; nor does he say what evidence he was unable to produce because of the delay between the violative behavior and the notice of the report.

Mr. Lewis alludes to prejudicial policies; but he has not demonstrated that <u>his</u> due process rights were violated when the BOP revoked his good-time credits.

V.      **Conclusion**:

The Court recommends that Chief Judge Marshall DISMISS Mr. Lewis's petition for writ of habeas corpus and DENY the pending motion for an extension of time, as moot.

DATED this 30th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

5